**Cornelius O'KEEFE, Plaintiff,**

v.

**The UNITED STATES of America; Thomas H. Henley, M. D. (dismissed 12–11–78); Opal M. Zschiesche, M. D. (dismissed 12–11–78); and H. G. Daniel, M. D. (dismissed 12–11–78), Defendants.**

**No. CIV–78–0838–T.**

United States District Court, W. D. Oklahoma.

Feb. 21, 1980.

Terry W. West of Henry, West & Sill, Shawnee, Okl., for plaintiff.

Larry D. Patton, U. S. Atty. and David Poarch, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

This is a suit for damages against the United States of America, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401 and 2671, et seq., under which this Court has jurisdiction. This action was timely filed thereunder, following administrative denial of plaintiff's claim by the Veterans' Administration on February 14, 1978. The case was tried to the Court on Monday, February 4, 1980, plaintiff appearing personally and by his counsel, Terry W. West, the defendant appearing through Assistant U. S. Attorney David A. Poarch.

Having heard and considered the evidence, testimony and argument of the respective parties, the Court files this Memorandum Opinion which shall constitute its findings of fact and conclusions of law herein.

The defendant, United States of America, has admitted the issues of liability and proximate cause for the injuries received by the plaintiff and thus the only issue before the Court is damages. Accordingly, only a brief summary of the facts bearing on the negligent acts and omissions of defendant's agents is necessary for the purpose of this order.

Plaintiff Cornelius O'Keefe was a career soldier in the United States Army, from which he was retired in 1972. He came to the United States from his native Ireland in 1949. He received seven to eight years of formal education in Ireland and later received a G.E.D. high school equivalency cer-

tificate in the United States. He is presently 52 years old with a life expectancy of 21.64 years. He was 44 years old when defendant's negligence occurred. Throughout his life, and until disabled as herein described, he has been an active man, engaging in farming in Ireland, active physical activity as a career soldier, a member of the U.S. Army soccer team, and participating regularly in water sports, dancing and manual labor, including employment as a truck driver.

In November, 1972, plaintiff was examined by physicians of the Veterans' Administration Hospital in Oklahoma City, Oklahoma, for complaints of pain in the area of his left hip and leg. X-rays were taken which revealed a tumor on the pelvic bone on his left side. However, no such finding was reported to plaintiff and the report from his attending physician contained no mention of the existence of the tumor. Plaintiff continued to experience pain in the area but remained ignorant of the existence of the tumor until January, 1976, when x-rays taken at Ft. Sill Army Hospital revealed the tumor which had increased in size several times from 1972 to 1976. Plaintiff was transferred to Brooke Army Hospital where a biopsy confirmed the tumor to be malignant. Exploration through the abdomen revealed the tumor was too large to remove without amputation of the left pelvic bones and left leg. A subsequent surgical procedure, a hemipelvectomy, was performed in March, 1976, resulting in the amputation of the entire leg and pelvic bones on the left side. Had the existence of the tumor been reported by the Veterans' Administration Hospital physicians in 1972, its removal, together with some bone and muscle, without amputation, is all the medical treatment that plaintiff would have been required to undergo to correct his condition. Such surgery would have resulted only in some impairment in function with some limping as the extent of its predictable consequences. In short, as defendant admits, its physicians' negligence in failing to diagnose and report plaintiff's condition proximately caused the eventual loss of plaintiff's leg and pelvic bones, with its resultant physical and mental pain and suffering, disfigurement, loss of earning capacity, and other damages herein described.

Because the hemipelvectomy is an amputation at such a high level of the body, satisfactory prosthesis assistance is uniquely difficult in that the artifical leg is difficult to control, its use consumes a great deal of energy, causes fatigue, and further results in severe gait abnormalities. While plaintiff has been fitted with prosthesis, and through therapy and determination has learned to use it, his physical activities are severely limited. As a result of the hemipelvectomy, plaintiff has suffered severe emotional damage, suffers from problems of bladder and bowel control, hemorrhoids, loss of sexual activity and is disfigured. He has suffered pain, both before and after surgery, and suffers pain from the pressure of the prosthesis presently and will suffer such pain in the future. He has suffered, presently suffers and will continue to suffer depression and neurosis as a reaction to the trauma he has experienced. These findings are established by evidence furnished by two qualified medical experts, one, the surgeon who performed plaintiff's hemipelvectomy, and a psychiatrist who evaluated plaintiff as to emotional impairment. Both experts described plaintiff as stoic, tough and uncomplaining and credited plaintiff with uncommon determination to overcome the pain and the physical and emotional consequences of what the surgeon termed a "devastating" surgical procedure. Nevertheless, plaintiff will continue to experience pain and suffering, both physical and emotional, during his lifetime. Plaintiff is entitled to recover from the defendant for past and future pain and suffering, mental and emotional suffering and disfigurement in amounts hereinafter set forth.

While the defendant does not dispute its liability in this action, it asserts that it is entitled to offset against any damage award an amount equal to the past and anticipated future payments to plaintiff as veteran's disability benefits. Moreover, the defendant asserts that it is entitled to a dollar-for-dollar set-off against a lump sum

award of damages to plaintiff. In response to these contentions, plaintiff argues that a dollar-for-dollar set-off is not an appropriate computation of such a reduction but that the anticipated future payments to plaintiff of veteran's disability benefits must be reduced to the present value of those payments prior to their deduction against any lump sum award. In addition, plaintiff asserts that the defendant is not entitled to an offset of 100% of the veteran's disability benefits, but is only entitled to offset the lump sum award by the amount the veteran's disability benefits exceed the plaintiff's military retirement benefits.

In regard to the issue of whether the anticipated value of any offset allowed in favor of the defendant should be reduced to its present value, the Tenth Circuit has expressly stated:

"In our opinion the best rationale is contained in the opinion of Senior Circuit Judge Barnes in the Ninth Circuit case of *United States v. English*, wherein the court objected to the offset approach of the Alaskan rule, but approved the trier of fact taking into account estimated changes in the purchasing power of money, and at the same time discounting the future income stream to its present value." *Steckler v. United States*, 549 F.2d 1372 at 1378 (10th Cir. 1977).

■ A brief review of the decision referred to by the court, *United States v. English*, 521 F.2d 63 (9th Cir. 1975), reveals that the Ninth Circuit considers a trial court's failure to discount expected future earnings to their net present value as clearly erroneous requiring reversal and remand of the action for such consideration. Accordingly, it is the conclusion of this Court that any set-off allowed to defendant of expected future disability benefit payments must be reduced to the present value of those payments.

In regard to the amount of any set-off to which the government is entitled, the Supreme Court has provided some guidance in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). There the Court stated:

"Provisions in other statutes for disability payments to servicemen, and gratuity payments to their survivors, 38 U.S.C. § 701, indicate no purpose to forbid tort actions under the Tort Claims Act. Unlike the usual workman's compensation statute, e. g., 33 U.S.C. § 905, there is nothing in the Tort Claims Act or the veteran's laws which provides for exclusiveness of remedy. . . . Nor did Congress provide for an election of remedies . . . .

But this does not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the Tort Claims Act. Without the benefit of argument in this Court, or discussion of the matter in the Court of Appeals, we see no indication that Congress meant the United States to pay twice for the same injury. Certain elements of tort damages may be the equivalent of elements taken into account in providing disability payments. It would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example. And whatever the legal theory behind a wrongful death action, the same considerations might apply to the government's gratuity death payment to Arthur Brook's survivors, although national service life insurance might be considered a separate transaction, unrelated to an action in tort or other benefits." 337 U.S. at 53–54, 69 S.Ct. at 920–921.

■ From this it is readily apparent that the Court was concerned that a successful plaintiff under the Tort Claims Act should not receive compensation from the United States more than once for any specific loss. This Court shares that concern.

In this case, the testimony revealed that the plaintiff retired from military service and began receiving military retirement pay. When the Veterans' Administration reclassified plaintiff as being 100% disabled, plaintiff was required to elect to receive

either military retirement benefits or veteran's disability benefits. He could not receive both benefits concurrently. Further, the testimony disclosed that the military retirement benefits were equivalent to only 69.8756% of the veteran's disability benefits. Plaintiff chose to receive the higher veteran's disability benefits in lieu of the military retirement pay he had been receiving. The defendant now seeks to offset any lump sum award to plaintiff by both the full value of the anticipated future disability benefits and actual past benefits paid to plaintiff. The plaintiff asserts that he is entitled to a deduction from the claimed set-off of defendant in an amount equal to the value of the retirement benefits he would have received had he elected to receive them instead of the disability benefits. In other words, plaintiff contends the extent of defendant's set-off is limited to the *difference* between plaintiff's retirement benefits, which he would have received in any event, and the disability benefits to which he is entitled.

The parties have cited no authorities to the Court pertaining to the issue here presented. The defendant relies heavily upon the Tenth Circuit opinion in *Steckler v. United States*, 549 F.2d 1372 (10th Cir. 1977). There the court determined that the government is entitled to offset against a lump sum award amounts attributable to veteran's disability payments. However, *Steckler* is distinguishable because it does not appear from the facts of that case that the plaintiff was either entitled to or receiving retirement benefits which were displaced by the disability payments.

It is clear that plaintiff would have received his retirement benefits but for his election to receive the disability benefits instead. The government seems to concede that if the plaintiff had not elected to receive disability benefits, but had continued to receive retirement benefits, then the government would not seek to discount plaintiff's recovery here by an amount equal to the retirement benefits which plaintiff would be entitled to. The government has already prevented a duplication of benefits by requiring the plaintiff to elect

between retirement benefits or disability benefits. To grant the government now a set-off equivalent to the entire value of plaintiff's otherwise justly earned retirement benefits would be to divest plaintiff entirely of that retirement income which plaintiff earned through many years of distinguished service to his adopted nation.

38 U.S.C. § 3105 provides in part as follows:

"Any person who is receiving pay pursuant to any provision of law providing retired or retirement pay to persons in the Armed Forces, . . . and who would be eligible to receive pension or compensation under the laws administered by the Veteran's Administration if he were not receiving such retired or retirement pay, shall be entitled to receive such pension or compensation upon the filing by such person with the department by which such retired or retirement pay is paid of a waiver of so much of his retired or retirement pay as is equal in amount to such pension or compensation. To prevent such duplication of payments, the department with which any such waiver is filed shall notify the Veteran's Administration of the receipt of such waiver, the amount waived, and the effective date of the reduction in retired or retirement pay."

The clear and unambiguous language of the statute reveals that this statute is intended not to divest persons from their justly earned retirement benefits, but to prevent a duplication of payments between retirement benefits and disability benefits. To hold that the defendant is not entitled to claim a deduction of the amount equivalent to what plaintiff would have been paid as retirement benefits but for his election is not to say that the government will be paying twice for the same injuries. The Treasury of the United States has benefited once by a deduction of one benefit against the payment of another. A second such deduction would effect a forfeiture of plaintiff's retirement benefits as a result of the defendant's negligence toward plaintiff.

The evidence reveals that the defendant's negligence resulted in plaintiff suffering damages in the amount of $47,321.09 for past lost wages and services as well as $248,334.17 representing the present cash value of the future wages and services lost by plaintiff. In addition to these amounts, the plaintiff is entitled to damages in the amount of $300,000.00 as compensation for his physical pain and suffering, deformity, disfigurement, and emotional and mental distress. Against this total lump sum award of $595,655.26, the defendant is entitled to set-off past disability payments in excess of what the plaintiff would have received as military retirement benefits but for his election to receive disability payments. The evidence shows that plaintiff received a total of $47,310.14 in benefits due to his 100% disability rating. The evidence further shows that 30.1244% of this sum is attributable to the higher value of the disability payments when compared to the lower value of plaintiff's earned retirement benefits. Thus, the defendant's set-off of past disability payments is calculated to be $14,251.94. In addition, the defendant is entitled to set-off against the lump sum award to plaintiff the value of the anticipated future disability benefits which exceed the value of the anticipated future retirement benefits plaintiff would receive but for his election to receive disability benefits instead. While there is a minor dispute as to the actual value of the anticipated future disability payments to be made to plaintiff, the Court finds that the future disability payments to plaintiff over the anticipated remaining 21.64 years of his life will total $260,923.84. The evidence submitted by plaintiff's economic expert shows that the present cash value of this sum totals $210,371.00 when calculated at a discount rate of 2.0%. While defendant disputes the accuracy of this discount rate, it is evident to the Court that the plaintiff's discount rate is achieved by comparing the market-available interest rates with the competing inflationary factors in the national economy. The defendant's proposed calculations only reflect available interest rates and do not allow for the consideration of inflationary factors. See, *Steckler v. United States*, supra. On the basis of a present cash value of $210,371.00 for plaintiff's anticipated future disability payments, $63,373.22 is attributable to the higher value of the disability payments when compared to the lower value of plaintiff's otherwise earned retirement benefits. Accordingly, defendant is entitled to an additional set-off of $63,373.22.

In summary, the Court concludes that plaintiff is entitled to a single lump sum totalling $595,655.26, against which the defendant is entitled to a set-off of $77,625.16, for a net judgment in plaintiff's favor of $518,030.10.